**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CASEY Q. BURKE,
Plaintiff-Appellant,

v.

COMMONWEALTH OF VIRGINIA;

COMMONWEALTH OF VIRGINIA
DEPARTMENT OF CORRECTIONS; PAUL
BROUGHTON; LONNIE M. SAUNDERS,
Warden; THOMAS R. PARK,
Defendants-Appellees.

No. 96-1709

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-95-934)

Argued: April 10, 1997

Decided: June 6, 1997

Before HALL and NIEMEYER, Circuit Judges, and
DUFFY, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Terry William Raney, Richmond, Virginia, for Appellant.
Guy Winston Horsley, Jr., Senior Assistant Attorney General,

OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** James S. Gilmore, III, Attorney General of Virginia, Catherine C. Hammond, Deputy Attorney General, Neil A.G. McPhie, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Casey Q. Burke sued the Commonwealth of Virginia and its employees under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq ., alleging that the defendants discriminated against him in testing and training him to be a correctional officer. Burke claims that the defendants failed to make reasonable accommodation for his "attention deficit hyperactivity disorder" and "developmental expressive and receptive language disorder." He also claims that defendants retaliated against him for filing a discrimination claim with the EEOC. The district court entered summary judgment in favor of the defendants, and Burke appealed. We affirm.

In January 1993, after Virginia's Augusta Correctional Center hired Burke as a correctional officer, it sent him to the Department of Corrections Training Academy where he was required to earn passing grades in order to be certified as a correctional officer. The training coordinator at the academy informed the Augusta Correctional Center's warden, however, that Burke failed to obtain the minimum passing score on his mid-term examination. Although Burke was given a second and a third chance to pass the examination in one-on-one administrations, he failed both times. After having failed the test a total of three times, Burke informed the training officers that he had mild dyslexia.

2

The Training Academy referred Burke to the Center for Learning Potential "to determine if [he] has any learning disabilities which should be accommodated during the testing situation," and Burke was provisionally diagnosed with "attention deficit hyperactivity disorder" and "developmental expressive and receptive language disorder." In his report, the evaluating psychologist repeatedly noted that Burke lacked the ability to process or remember aurally received information. The evaluator also noted that Burke's reading skills were "significantly weak," and concluded, "[a]lthough[Burke] is expressing an interest in being a correctional officer, the results from his interest inventory, as well as his cognitive skills and abilities are not consistent with this occupational area."

The Department of Corrections thereafter informed Burke that it had received Burke's evaluations and that it did not believe that the Department of Corrections could accommodate him in any way that would allow him to become a certified correctional officer. Specifically, the Department of Corrections stated,

> [Y]our inability to read, respond, remember, and follow instructions are verified by the evaluation. These are essential requirements of a Corrections Officer in the everyday supervision of inmates and the reading and following of post orders.

Nonetheless, the Department of Corrections offered Burke the position of motor vehicle operator at another facility at the same salary paid to correctional officers. Burke rejected that offer because the travel distance to work would have been too great. The Department of Corrections then offered Burke the position of store clerk at the Augusta Correctional Center, which he accepted. After almost a year at that position, however, Burke quit.

The ADA provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities or a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). The term "qualified individual with a disability" is defined by the Act to mean "an individual with a disability who, with or without reasonable accom-

3

modation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The official job description for the position of correctional officer requires that the employee be able to "communicate both orally and in writing and read and interpret written material." It also requires that upon completion of training, the employee demonstrate an "ability to apply and interpret laws, rules and regulations, conduct thorough searches and investigations; recognize problems for report to higher supervisory level; provide leadership and work direction to inmates; and to use good judgment in the use of lethal force." According to the psychological evaluation of Burke, his "auditory skills are inadequate for learning"; he "has difficulty retaining information learned orally"; and he was limited to circumstances where "verbal instruction" was not necessary. Thus, according to the job description, which is not disputed by any other evidence in this case, Burke is not qualified regardless of any accommodation that can be hypothesized. Indeed, the psychologist at the Center for Learning Potential found that Burke's "cognitive skills and abilities are not consistent with this occupational area." And that finding is not controverted. Accordingly, Burke has failed to state a claim under the ADA.

Notwithstanding Burke's inability to demonstrate that he is protected by the ADA for a correctional officer's position, Virginia provided Burke with other suitable positions, the second of which he accepted. He makes no allegation that his departure from this clerk's position was in any way prompted by acts of discrimination.

In his complaint Burke also alleges that Virginia retaliated against him because he filed a discrimination claim with the EEOC. It is undisputed, however, that Virginia rejected him from the position of correctional officer before he engaged in the protective activity of asserting any rights under the ADA. The only conceivably retaliatory action which Burke alleged was failure to hire him for the position of boiler operator. All the evidence in this regard, however, indicates that he was not hired because he was unqualified.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

4